UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARLIS O'LEARY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) 08 C 7246 |
| | ) |
| PAUL KAUPAS, et al., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This case comes before the court on the motion of Defendant James Luna for summary judgment pursuant to Fed. R. Civ. P. 56 and the motion of Plaintiff Marlis O'Leary to compel discovery under Fed. R. Civ. P. 37. For the reasons stated below, we grant both motions.

## BACKGROUND

On March 18, 2006, the Will County Sheriff's Office hired Plaintiff Marlis O'Leary ("O'Leary") as a correctional officer at the Will County Adult Detention Facility ("ADF"). O'Leary worked at the ADF from March 18, 2006, until June 27, 2007. Defendant Sergeant James Luna ("Luna") also worked at the ADF with O'Leary. As sergeant, Luna served in a supervisory capacity and had the authority to discipline other correctional officers at the ADF.

From March 2006 to August 2006, Luna made a number of advances toward O'Leary and engaged in sexually suggestive behavior in her presence. During O'Leary's first month of employment, Luna asked her out on dates ten or fifteen times. On one occasion, Luna placed a baton between his legs, used it to simulate sexual intercourse with O'Leary, and then struck her with the baton on the upper thigh. Luna also made a wager with another correctional officer regarding who would be the first person to sleep with O'Leary. During a training session, Luna grabbed O'Leary by the arm and began yelling at her about the manner in which she wore her bulletproof vest. In another incident during training, Luna discharged a stun gun in O'Leary's direction. Finally, Luna invited O'Leary to his birthday party in the summer of 2006. Luna never bothered O'Leary again after that. On December 10, 2006, Luna stopped working at the ADF due to a work-related injury and did not return until June 1, 2007.[1]

O'Leary filed suit against Luna on December 18, 2008. In her complaint, O'Leary asserted a claim under 42 U.S.C. § 1983 alleging that Luna violated her equal protection rights by subjecting her to sexual harassment. Her complaint also included a cause of action for intentional infliction of emotional distress ("IIED") under Illinois law. Luna moved for summary judgment on all claims against him on June 29, 2010.

---

[1] The parties' statements of undisputed facts do not list any instance of inappropriate behavior by Luna or any other Will County ADF employee from the date of Luna's return to work on June 1, 2007, until the date of O'Leary's departure on June 27, 2007.

On September 17, 2010, O'Leary filed a motion to compel discovery related to the destruction of a "Book of Shame" maintained by employees at the ADF.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

### I. Motion For Summary Judgment

Luna argues that he is entitled to summary judgment on O'Leary's claims against him because they are both barred by the applicable statute of limitations. We will first discuss the merits of Luna's motion with respect to O'Leary's federal claim under 42

U.S.C. § 1983 before assessing the timeliness of her IIED cause of action under Illinois law.

**A.    Timeliness of O'Leary's Section 1983 Claim**

Luna contends that we should enter judgment as a matter of law in his favor on O'Leary's § 1983 claim because no genuine issues of fact exist regarding Luna's lack of involvement in harassing behavior during the limitations period. In Illinois, suits under 42 U.S.C. § 1983 are subject to a two-year statute of limitations. *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005). O'Leary instituted this action against Luna on December 18, 2008. The parties do not dispute that Luna did not engage in sexually harassing behavior after August 2006. Additionally, the parties agree that Luna was absent from the Will County ADF from December 10, 2006, until June 1, 2007, by which time the incidents of improper conduct toward O'Leary had ceased. Given the parties' agreement as to Luna's lack of personal involvement in the conduct at issue during the limitations period, we would ordinarily be inclined to grant Luna's motion for summary judgment on O'Leary's section 1983 claim.

O'Leary nevertheless maintains that her § 1983 claim should proceed to trial because triable issues of fact exist regarding Luna's legal responsibility for the inappropriate conduct of his subordinates during the limitations period. To establish a supervisor's liability for his subordinates' conduct, a supervisor must have been personally involved in that conduct. *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th

Cir. 1988). To demonstrate a supervisor's personal involvement in a subordinate's behavior, a plaintiff must show that he knew about the conduct and facilitated it, approved it, condoned it, or turned a blind eye to it. *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997).

O'Leary cannot establish Luna's responsibility for his subordinates' behavior because she has not presented evidence that Luna was aware of the inappropriate conduct that occurred after he began his leave of absence. O'Leary contends that we should hold Luna accountable for the other ADF officers' objectionable behavior because he facilitated it by engaging in similar conduct prior to his departure. This argument ignores another necessary element to establish supervisory liability: the supervisor's knowledge of his subordinates' conduct. *See Gossmeyer*, 128 F.3d at 495; *Jones*, 856 F.2d at 992. Absent any indication that Luna knew of the inappropriate behavior toward O'Leary that occurred during his medical leave, no reasonable jury could find him liable for others' alleged harassment of O'Leary during the limitations period. *See Jones*, 856 F.2d at 992.

The parties agree that Luna did not personally harass O'Leary during the limitations period and we find no basis for a reasonable jury to hold him liable for other ADF employees' behavior that occurred during the limitations period. We therefore grant Luna's motion for summary judgment on O'Leary's § 1983 claim.

**B.      Timeliness of O'Leary's IIED Claim**

Luna also argues that we should grant him summary judgment on O'Leary's IIED action because no reasonable juror could hold him legally responsible for any conduct that occurred during the limitations period. Generally, IIED claims under Illinois law are subject to a two-year statute of limitations. *See* 735 ILCS § 5/13-202. The two-year limitations period does not apply to all IIED claims, however: an action against an employee of a local governmental entity arising out of conduct occurring within the scope of his employment has a one-year limitations period. *See* 745 ILCS § 10/8-101. Luna contends that we should utilize the one-year limitations period because Luna was a Will County employee and the conduct at issue occurred within the scope of his duties. O'Leary responds that Luna's behavior cannot be considered within the scope of his employment and that the two-year statute of limitations should be used instead. Because the duration of the limitations period does not ultimately affect our decision, we will assume without deciding that the two-year limitations period applies.

O'Leary maintains that we should not find her IIED claim untimely as a matter of law because Luna is liable for his subordinates' tortious conduct that occurred after he began his medical leave. In Illinois, the limitations period for an IIED claim against an individual involving a continuing injury stemming from a series of tortious acts does not begin until the date of the individual's last act. *See Feltmeier v. Feltmeier*, 798

N.E.2d 75, 85-87 (Ill. 2003). O'Leary argues that Luna's last tortious act occurred after he left the ADF and within the two year limitations period. Specifically, she contends that, based on either one of two theories of vicarious liability, we should impute other correctional officers' inappropriate conduct to Luna. Under a concert of action theory, Luna could be liable for others' tortious behavior if he: (1) did a tortious act in concert with them or pursuant to a common design; or (2) knew that the correctional officers' conduct amounted to an IIED and gave substantial assistance or encouragement to their behavior; or (3) gave substantial assistance to his subordinates in accomplishing the tortious result and his own conduct independently constituted an IIED. *See Simmons v. Homatas*, 925 N.E.2d 1089, 1100-03 (Ill. 2010); *Wolf v. Liberis*, 505 N.E.2d 1202, 1208 (Ill. App. Ct. 1987). To be liable for the harm caused by another's tortious behavior under an aiding and abetting theory, "(1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be generally aware of his role as part of the overall or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." *Liberis*, 505 N.E.2d at 1208.

O'Leary has not established any basis to hold Luna liable under a vicarious liability theory during the limitations period because she cannot point to any evidence that Luna acted tortiously himself or provided substantial assistance to a different

tortfeasor after he left the ADF. Absent some indication to the contrary, we conclude that Luna's last alleged tortious act against O'Leary occurred outside the limitations period. *See Feltmeier*, 798 N.E.2d at 87. Therefore, we find that O'Leary has no actionable claim against Luna as a matter of law and award Luna summary judgment on the IIED claim.

## C. Equitable Tolling

In the alternative, O'Leary argues that the statute of limitations for her section 1983 and IIED claims should be held equitably tolled due to her alleged Post Traumatic Stress Disorder ("PTSD") caused by Luna's conduct. We look to Illinois law to determine whether equitable tolling applies to both her section 1983 cause of action and her IIED claim. *Shropshear v. Corp. Counsel of Chicago*, 275 F.3d 593, 596 (7th Cir. 2001) (state doctrine of equitable tolling governs section 1983 actions). Under Illinois equitable tolling doctrine, when a potential plaintiff suffers from a legal disability at the time a cause of action accrued, the statute of limitations is tolled until the disability is removed. 735 ILCS § 5/13-211; *Parks v. Kownacki*, 737 N.E.2d 287, 295 (Ill. 2000). To be considered legally disabled, an individual "must be entirely without understanding or capacity to make or communicate decisions regarding his person and totally unable to manage his estate or financial affairs." *Bloom v. Braun*, 739 N.E.2d 925, 932 (Ill. App. Ct. 2000).

O'Leary has not presented sufficient evidence for a reasonable juror to conclude that she suffered from a legal disability such that equitable tolling is appropriate. O'Leary contends that she had great difficulty caring for her estate during the limitations period; this degree of difficulty does not equate to the complete inability to conduct one's affairs that must be present in order for equitable tolling to apply. *Id*. While we do not discount the possibility that she endured some measure of distress as a result of the alleged harassment she suffered at the Will County ADF, the record contains no suggestion that her mental anguish rendered her unable to manage her estate or financial affairs. Finding no genuine issues of fact with regard to O'Leary's alleged legal disability, we decline to allow O'Leary's claims against Luna to proceed to trial on this basis.[2]

## II.   Motion To Compel

O'Leary requests that we compel Defendant Will County Sheriff Paul Kaupas ("Kaupas") to provide discovery related to the destruction of a so-called "Book of

---

[2] O'Leary also asks that we deny Luna's motion without prejudice pursuant to Fed. R. Civ. P. 56(f) until the depositions of O'Leary's psychiatrist, social worker, and various experts are completed. We do not think such additional discovery is necessary. O'Leary has provided no explanation as to why she could not obtain affidavits from these individuals in support of her disability argument. Without valid justification for her failure to obtain the required evidence, we deny her request for a continuance under Fed. R. Civ. P. 56(f). *See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 886 (7th Cir. 2005) (a court may deny a request for a continuance to obtain discoverable evidence when a party fails to obtain such information through lack of diligence).

Shame" maintained by employees at the ADF.[3] A party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). O'Leary argues that the discovery responses related to the Book of Shame's destruction will provide information relevant to her sexual harassment claims under Title VII and 42 U.S.C. § 1983. In her deposition, O'Leary testified that certain correctional officers showed her the Book of Shame, that the book contained pictures of females accompanied by sexually explicit comments, and that she found the images embarrassing. Her record testimony provides a reasonable basis to suggest that the discovery responses at issue could produce relevant material. Accordingly, the motion to compel is granted. Kaupas must complete the discovery requests related to the Book of Shame's destruction by November 10, 2010.

## CONCLUSION

Luna's motion for summary judgment is granted. O'Leary's motion to compel is also granted. Kaupas' motion to strike is denied as moot.

Charles P. Kocoras
_____
Charles P. Kocoras
United States District Judge

Dated:   October 19, 2010

---

[3] Kaupas filed a motion to strike O'Leary's reply because we explicitly directed her not to file a reply memorandum. Because we did not rely on O'Leary's reply in rendering our decision, Kaupas' motion to strike is denied as moot.