# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MARLIS O'LEARY, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 08 CV 7246 |
| PAUL KAUPAS, *et al.*, | ) | Judge Charles P. Kocoras |
| Defendants. | ) | |

## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S EQUAL PROTECTION CLAIMS, AND IN THE ALTERNATIVE, AS TO PLAINTIFF'S PRAYER FOR PUNITIVE DAMAGES

Defendants PAUL J. KAUPAS and MARTIN SHIFFLET, in their individuals capacities, through their undersigned attorneys and pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, move for the entry of judgment as a matter of law as to Plaintiff's equal protection claim against each of them, and in the alternative, for the entry of judgment as a matter of law as to the prayers for punitive damages within the equal protection claims, and in support of this motion, state as follows:

1. Plaintiff asserts personal capacity equal protection claims against Sheriff Paul Kaupas and retired Lt. Martin Shifflet based on the allegation that both men, as supervisors, tolerated and condoned a sexually hostile work environment. Both claims include a request for punitive damages.

2. Because Plaintiff's equal protection claims are personal capacity claims that seek to hold Kaupas and Shifflet individually liable, the equal protection claims involve a smaller set of alleged conduct than her Title VII claim does. Individual liability under Section 1983 must be based on conduct which the supervisory official: (a) was directly responsible for, and (b)

knowingly or recklessly failed to act upon. *McPhaul v. Board of Commissioners of Madison County*, 226 F.3d 558, 566 (7th Cir. 2000). Therefore, Plaintiff's equal protection claims and the associated requests for punitive damages can only be based upon conduct in which Kaupas or Shifflet was personally involved.

3. Kaupas and Shifflet are entitled to judgment as a matter of law on the equal protection claims because there is no legally sufficient evidentiary basis for a reasonable jury to find for Plaintiff on those claims. *See Murray v. Chicago Transit Authority*, 252 F.3d 880, 886 (7th Cir. 2001) (Under Rule 50, a court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."). In making this determination, a trial court views the evidence in the light most favorable to the non-moving party. *Id*.

4. In *Murray*, the Seventh Circuit affirmed the trial court's directed verdict ruling on the plaintiff's Title VII claim. The Court acknowledged the plaintiff had testified that she was subjected to numerous adverse actions after she rejected two sexual advances by her supervisor. 252 F.3d at 888. The adverse actions included having travel plans denied, not being interviewed for a promotion, having her cell phone taken away and phone bills scrutinized, and having her company car taken away. The Court concluded that the directed verdict was correctly granted for defendants because even assuming that the plaintiff's testimony was true, the evidence failed to prove the existence of a hostile work environment as required to recover under Title VII. *Id*.

5. Even if this Court concludes that there is enough evidence for a reasonable jury to find for Plaintiff on the equal protection claims generally, both Kaupas and Shifflet are entitled to judgment as a matter of law on the associated requests for punitive damages because Plaintiff has failed to prove that either Kaupas or Shifflet acted with "a callous or reckless disregard for

2

her rights or with an evil motive or intent" as required for such relief. *Tincher v. Wal-Mart Stores, Inc.*, 118 F.3d 1125, 1133 (7th Cir. 1997).

6. To obtain punitive damages, a plaintiff must jump a higher hurdle than merely proving that her equal protection rights were violated. *Emmel v. Coca-Cola Bottling Co.*, 95 F.3d 627, 636 (7th Cir. 1996). Plaintiff must go beyond proving the elements of the underlying equal protection claim and additionally show that Kaupas and Shifflet acted "with malice or reckless indifference to [Plaintiff's] federally protected rights." *See Tincher*, 118 F.3d at 1132; *May v. Chrysler Group, LLC*, 692 F.3d 734, 745 (7th Cir. 2012).

7. To satisfy the malice or reckless indifference standard, a plaintiff must show that the defendant actually perceived the risk that his actions would violate federal law. *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 536, 119 S.Ct. 2118 (1999). In *Kolstad*, the Supreme Court explicitly stated that "[t]here will be circumstances where intentional discrimination does not give rise to liability under this standard." *Id*. The Court explained that historically, the terms "malice" and "reckless indifference" were used to describe a "criminal indifference to civil obligations." *Id*. Accordingly, the Court concluded that the proper focus is the defendant's knowledge of the risk of injury. *Id.*, at 536-38.

8. Even if Plaintiff were deemed to have met this standard (which she does not), punitive damages would still not be appropriate because none of the alleged conduct by Kaupas or Shifflet "is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards." *See Smith v. Wade*, 461 U.S. 30, 54, 103 S.Ct. 1625 (1983).

**I. Plaintiff Offered No Evidence To Show That Lt. Shifflet Was Directly Responsible For A Hostile Work Environment, Let Alone That He Acted With Malice Or Reckless Indifference.**

9. Plaintiff admitted at trial that Shifflet did not sexually harass her, which is fatal to

3

her claim. Moreover, Plaintiff did not complain to Shifflet about sexual harassment. Thus, her claim against him is based entirely upon the following incidents: (a) that Shifflet allowed her coworkers to view pornography on their computers; (b) that Shifflet allowed her coworker to play a computer game involving images of testicles; and (c) that Shifflet told Mike Harkins that he "didn't want pussy" in the booking area of the jail.

10. Even when viewed in the light most favorable to Plaintiff, the evidence concerning each of these incidents falls far short of showing that Shifflet tolerated or condoned a sexually hostile work environment, and therefore Plaintiff has failed to prove her equal protection claim. But even if the evidence is deemed sufficient to have a jury decide this claim generally, there is no evidence to support Plaintiff's request for punitive damages and therefore Shifflet is entitled to judgment as a matter of law as to that request for relief.

### A. No Evidence That Coworkers Were Allowed To View Pornography On Their Computers.

11. Plaintiff testified that she noticed unidentified coworkers viewing pornography on their computers in the summer of 2006 during her training period when she was assigned to the booking area.

12. However, Plaintiff offered no evidence that Shifflet was aware of the coworkers' conduct. Though Plaintiff testified that Shifflet walked by those coworkers while they were viewing pornographic images on their computers, she admitted that she was unable to say whether Shifflet saw what the coworkers were doing. Indeed, she conceded that Shifflet did not do anything to indicate that he saw the images, and Plaintiff did not complain to Shifflet or otherwise speak to him about the images. Thus, Plaintiff has failed to prove that Shifflet tolerated or condoned a sexually hostile work environment.

13. Shifflet's alleged awareness of the computer images is based solely upon Plaintiff's subjective belief, and therefore her claim is legally deficient. *See Knight v. Kerstein*, 836 F.Supp.2d 719, 726 (N.D.Ill. 2011) (granting summary judgment to defendant on issue of punitive damages where plaintiff's only "proof" of evil motive was her own "subjective belief").

14. Given that Plaintiff has not proven or presented any evidence that Shifflet even noticed the images that he allegedly passed by on two occasions, there is correspondingly no basis to conclude that Shifflet tolerated or condoned a sexually hostile work environment, let alone that he acted with a callously or col-heartedly, or with evil intent to cause harm to Plaintiff, as is required for punitive damages.

**B. No Evidence That Shifflet Knew Plaintiff Was Offended By The Computer Game.**

15. Plaintiff testified that on one occasion, she saw Gabriel Alvarado playing a video game on one the computers in the booking area. She testified that the video game was "whack-a-ball" and the object of the game was to smack images of testicles. Plaintiff testified that she was offended by the video game and walked away from Alvarado's work station. As she was leaving the booking area, Shifflet entered. Plaintiff did not speak to Shifflet. She saw Shifflet walk over to Alvardo's work station, view the computer screen and begin talking with Alvarado. Plaintiff could not hear their conversation but she heard them laughing. She admitted that she did not complain to any supervisors about this incident.

16. Nothing in Plaintiff's testimony shows that Shifflet acted with malice or reckless indifference to her federally protected rights as required for punitive damages.

17. Title VII prohibits conduct that is specifically hostile to a protected class of persons. *Yuknis v. First Student, Inc.*, 481 F.3d 552, 554-55 (7th Cir. 2007) (holding that to create a hostile work environment that violates Title VII, the challenged conduct must be hostile

5

to a specific protected class as opposed to being hostile generally).

18. The only way in which the video game was arguably offensive was its depiction of male body parts. Thus, even if the video game was offensive, it was because of a general vulgarity and was not specifically hostile to women as required for a violation of Title VII. The Seventh Circuit explained that actionable conduct must specifically "make the workplace uncomfortable for women, as distinct from making it uncomfortable for [other groups]." *Yuknis*, 481 F.3d at 554. Here the game could just as well have been offensive to men, "fastidious people," people who "abhor" images of nudity, etc. *See Id.* As a result, Plaintiff has not met the elements of her underlying claim. Because the video game was not even a violation of Title VII, Plaintiff has not shown that Shifflet acted with callously, cold-heartedly or with evil motive or intent. *See Tincher*, 118 F.3d at 1133.

19. Moreover, the video game was played on a single occasion and Plaintiff voiced no complaint about the video game to Shifflet or anyone else. There is no evidence indicating that Shifflet even knew Plaintiff had seen what Alvarado was doing on the computer, much less that Shifflet was aware Plaintiff was offended by that conduct. Shifflet did not know Plaintiff herself had seen the video game because by the time he entered the room, Plaintiff was already across the room from Alvarado's work station and was proceeding toward the exit. At no time did Plaintiff tell Shifflet or anyone else that the game was offensive to her.

20. Without some evidence that Shifflet knew Plaintiff was bothered by the video game, there is nothing to show that he acted with malice or reckless indifference towards Plaintiff's federally protected rights. Indeed, Plaintiff's Title VII rights were not at risk of being violated unless she was subjected to a sexually hostile working environment, and a single occasion of offensive computer conduct is insufficient as a matter of law to create an abusive

6

working environment. *See Johnson v. Jung*, 2009 WL 3156743 at *9 (N.D.Ill. Sept. 28, 2009) (holding that single incident of offensive computer use was not actionable under Title VII).

21. Because the video game was not patently hostile to women, and because Shifflet had no knowledge that the game bothered Plaintiff, there is no basis to conclude that Shifflet tolerated or condoned a sexually hostile work environment, let alone that he acted with a malicious desire to cause harm to her as required for punitive damages.

### C. No Evidence Of Shifflet's Comment To Mike Harkins.

22. Plaintiff's only support for the alleged "pussy" remark was her own inadmissible testimony. Although Plaintiff initially testified that she heard Shifflet say he "didn't want any pussy back [in the booking area]," she was impeached on cross-examination with her prior inconsistent statement that she only heard the comment second-hand. She then admitted to saying that Mike Harkins told her what Shifflet had said. Because Plaintiff is a party-opponent, that statement carries the weight of substantive evidence. See FRE 801(d).

23. There is no admissible evidence to show that Shifflet made the alleged remark. Plaintiff did not call Harkins or Shifflet to testify and therefore no testimony was elicited from either of them on this point. Because there is no evidence to show that Shifflet actually made the remark, it cannot serve as a basis for Plaintiff's equal protection claim, much less as a basis for punitive damages.

### II. Plaintiff Offered No Evidence To Show That Sheriff Kaupas Was Directly Responsible For A Hostile Work Environment, Let Alone That He Acted With Malice Or Reckless Indifference To Plaintiff

24. Plaintiff's claim against Kaupas is based on a single incident. The only alleged personal involvement of Kaupas is Plaintiff's alleged meeting with him in his office in March

2007. According to Plaintiff, she went to Kaupas' office to complain about Shifflet's sexual harassment of her.

25. As an initial point, Plaintiff's description of the meeting contradicts her other trial testimony and therefore is intrinsically dubious. As noted above, Plaintiff herself testified that Shifflet did not sexually harass her. Nor did Plaintiff present any evidence that she complained to Shifflet about sexual harassment. Thus, it is logically impossible that she went to Kaupas to complain about Shifflet's sexual harassment, when she had no reason to believe that Shifflet had engaged in sexual harassment in the first place.

26. More significantly, there is no evidence showing that Plaintiff told Kaupas about any of the instances of harassment she has described at trial. Because Plaintiff never communicated that information to Kaupas, he was never in a position to tolerate or condone a sexually hostile work environment, let alone to act with a malice or reckless indifference to Plaintiff's federal rights as required for punitive damages.

27. Thus, Kaupas is entitled to judgment as a matter of law on the equal protection claim because even when viewed in the light most favorable to Plaintiff, the evidence fails to show that he tolerated or condoned a sexually hostile work environment. Moreover, Kaupas' alleged conduct is even more benign than the manager's conduct in *Tincher*, which the Seventh Circuit held to be insufficient for punitive damages. *See* 118 F.3d at 1133 (Court reversed jury award of punitive damages because manager's disparaging remarks about the plaintiff and the lack of thoroughness in conducting an investigation that led to the plaintiff's termination were insufficient to support punitive damages).

28. There is no evidence to allow a reasonable jury to conclude that this conduct was cold-hearted, callous or involved an evil motive or intent. As a result, Kaupas is entitled to

judgment as a matter of law as to the request for punitive damages even if the equal protection claim survives.

WHEREFORE, Defendants Paul Kaupas and Martin Shifflet respectfully request that this Court enter an order granting judgment in their favor and against Plaintiff on the equal protection claims, and in the alternative, granting judgment in their favor and against Plaintiff on the prayers for punitive damages in the equal protection claims.

Respectfully submitted,

PAUL KAUPAS and MARTIN SHIFFLET

s/ Patrick R. Moran
One of their attorneys

Patrick R. Moran
Pamela L. Gellen
LOWIS & GELLEN LLP
200 West Adams Street
Suite 1900
Chicago, IL 60606
T: (312) 364-2500
F: (312) 364-1003