# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MARLIS O'LEARY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 CV 7246 |
| | ) | |
| PAUL KAUPAS, *et al.*, | ) | Judge Charles P. Kocoras |
| | ) | |
| Defendants. | ) | |

**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW
ON PLAINTIFF'S TITLE VII CLAIM, AND IN THE ALTERNATIVE,
AS TO ITS *ELLERTH/FARAGHER* DEFENSE**

Defendant WILL COUNTY SHERIFF'S OFFICE, through its undersigned attorneys and pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, moves for judgment as a matter of law on Plaintiff's Title VII claim in its entirety, and in the alternative moves for the entry of judgment as a matter of law as to its *Ellerth/Faragher* affirmative defense, and in support of this motion, states as follows:

**I.      Plaintiff Has Failed To Offer Any Credible Evidence To Show That A Hostile Work Environment Existed.**

1.      To establish Title VII liability under a hostile work environment theory, Plaintiff must show that her work environment was both subjectively and objectively hostile. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).  In the present case, the only evidence regarding any alleged hostile environment comes from Plaintiff herself; there is absolutely no corroboration.  Plaintiff's testimony is insufficient to establish either that she found her work environment subjectively hostile or that any conduct was objectively hostile, because Plaintiff's testimony is incredible as a matter of law.

2. In certain circumstances, a court may find a witness incredible as a matter of law. *See Stewart v. RCS Corp.*, 790 F.2d 624, 628 (7th Cir. 1986). For example, "[d]ocuments or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit it." *Seshadri v. Kasraian*, 130 F.3d 798, 802 (7th Cir. 1997). In this case, Plaintiff's testimony is incredible as a matter of law because of its implausibility, because of her own admissions, and because of the numerous times she was impeached on significant issues.

3. During training, Plaintiff worked in rotating assignments, as all trainees do, in each of the various units and shifts at the WCADF. During this time period, all of the alleged harassment occurred by individuals who worked on the afternoon shift. Despite her claims that she was subjected to unwelcome conduct by members of this shift, in October 2006, Plaintiff specifically requested, from Lt. Shifflet, a transfer *onto* the afternoon shift. In other words, she affirmatively went out of her way to seek a special accommodation to work with the very same people she claims harassed her and subjected her to conduct she supposedly found hostile. She also wanted to join the Emergency Response Team, which included the very same individuals she accused of harassing her.

4. In addition, Plaintiff maintained friendships with most of her alleged harassers. She welcomed some of them into her home, sometimes at or well into the late hours of the evening. She went to restaurants and bars socially with these individuals. She also had a clearly special relationship with Mike Harkins. She sent him cards and text messages with affectionate messages such as "puppy" and signed "kitty," or "your Kitty," or simply "meow." She and Harkins were so close that she allowed them to spend time with her toddler son, who developed his own personal nickname for Harkins.

5.	Plaintiff made the utterly incredible contention she wrote a greeting card addressed "Dear Puppy," signed "Your Kitty," with personal and intimate comments, but had no recollection of the person to whom she gave the card. Yet despite that inexplicable memory loss, Plaintiff was somehow certain that the intended recipient was not Harkins, even though he was in possession of the card. No reasonable jury could ever believe such testimony.

6.	On cross-examination, Plaintiff was forced to concede that she did not complain about nearly all of the alleged conduct at issue. She did not complain about: 1) Alvarado playing the "whack 'a ball" game; 2) Luna asking her on dates; 3) Luna firing a taser; 4) Luna yelling at her about her vest; 5) Luna inviting her to a party; 6) Luna's comments about being the first to get her; 7) Harkins bothering her for sex; 8) Harkins asking to take their relationship to the next level; 9) Harkins comments about her breasts at McBrody's; 10) Wilhelmi's conduct at her home; 11) Wilhelmi cornering her in a copy room; 12) Tomalieh's shoulder touching; 13) the photo album; or 14) Tomalieh's name calling.

7.	She never submitted any written complaint about anything at all, even though she submitted memos to as co-worker and supervisors about mundane personal issues, including her excitement about moving into Will County. That memo was sent after the alleged harassment by Luna and Harkins began, including the alleged baton incident and the alleged bet over who would sleep with her first. Plaintiff's excitement about her job stands in stark contrast to her trial testimony about how horrible these events were to her. All of this renders her claims and her testimony about a hostile environment objectively incredible.

8.	Moreover, Plaintiff's testimony was impeached roughly forty times on material issues. In each of those instances, her trial testimony directly contradicted her deposition testimony. The issues on which this impeachment occurred included her lack of lodging

complaints, that she took the anti-harassment policy seriously, that she could engage in better than average "verbal judo" with co-workers, that she was not fazed by seeing inmates engaged in self-gratification, that she never heard anybody call her a whore, that she did not directly hear Shifflet make the alleged comment about pussy, that she was not afraid for her safety during the alleged taser incident, that Tomalieh never said anything of a sexual nature in her home, that Wilhelmi did not hit on her at the birthday party, that she asked Adams to review her personnel file with her, that Shifflet never sexually harassed her, among many other topics of direct relevance to the alleged hostile work environment.

9.      The sum of all of the above is that Plaintiff's testimony, the sole evidentiary support for the claim, is so utterly and indisputably contradicted by objective evidence, contradicted by her own prior testimony under oath, internally inconsistent and patently implausible that it is incredible as a matter of law.  This is that one case in a thousand where the testimony is so outrageously detached from reality that the court should and must find, as a matter of law, that no reasonable jury could ever find in favor of Plaintiff.

**II.      The Evidence At Trial Establishes The Ellerth/Faragher Affirmative Defense And Therefore The Sheriff's Office Cannot Be Held Liable For The Alleged Conduct Of Sgt. Luna.**

10.      Plaintiff's Title VII claim against the Will County Sheriff's Office is based in part upon the allegation that a supervisor, Sgt. James Luna, sexually harassed her.  (Complaint, ¶¶14 and 16).  During her trial testimony, Plaintiff admitted that Sgt. Luna was the only supervisor who allegedly harassed her.  She also admitted that Lt. Shifflet did not sexually harass her.

11.       In its responsive pleading, the Sheriff's Office asserted the *Ellerth/Faragher* affirmative defense.  Under this affirmative defense, an employer will not be liable for supervisor harassment if the employer shows: (a) it exercised reasonable care to prevent and correct the

harassing behavior; and (b) the plaintiff unreasonably failed either to take advantage of any preventive or corrective opportunities that the employer provided, or to otherwise avoid harm. *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275 (1998). In addition, the employer must show that the supervisor's alleged harassment did not culminate in a tangible employment action such as discharge, demotion, or undesirable reassignment. *Murray v. Chicago Transit Authority*, 252 F.3d 880, 887 (7th Cir. 2001), *citing Ellerth*, 524 U.S. at 761; *Faragher*, 524 U.S. at 807-08.

12. Because the *Ellerth/Faragher* defense treats a supervisor as a different type of harasser than a coworker, only the conduct of the supervisor can be considered for purposes of deciding whether the *Ellerth/Faragher* defense is satisfied. *Mason v. Southern Ill. Univ. at Carbondale*, 233 F.3d 1036, 1045 (7th Cir. 2000). Separating the conduct for this limited purpose does not contravene the "totality of the circumstances" approach, because that test applies to determining whether the allegedly harassing conduct was severe or pervasive enough to have created a hostile work environment. *Id.*, n.7. As an affirmative defense, the *Ellerth/Faragher* defense presumes that a hostile work environment existed. *See Jackson v. City of Racine*, 474 F.3d 493, 500-01 (7th Cir. 2007) (Court presumed that hostile work environment existed when affirming summary judgment for employer based on *Ellerth/Faragher* defense).

13. The Sheriff's Office is entitled to judgment as a matter of law as to the part of Plaintiff's Title VII claim that is based on Sgt. Luna's conduct because there is no legally sufficient evidentiary basis for a reasonable jury to find for Plaintiff. *See Murray*, 252 F.3d at 886 (Under Rule 50, a court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to

find for that party on that issue."). In making this determination, a trial court views the evidence in the light most favorable to the non-moving party. *Id.*

### A. Luna's Conduct Did Not Cause Plaintiff To Suffer Any Tangible Employment Action.

14.     A tangible employment action constitutes a significant change in employment status such as a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits or significantly diminished job responsibilities. *Oest v. Illinois Dept. of Corrections*, 240 F.3d 605, 612-13 (7th Cir. 2001). "Not everything that makes an employee unhappy is an actionable adverse action" and therefore a plaintiff must show something more than minor changes to work conditions and unfulfilled subjective preferences. *Id.*

15.     Moreover, the plaintiff must show that the harassing supervisor took the tangible employment action against her. *See Johnson v. West*, 218 F.3d 725, 731 (7th Cir. 2000) (the *Ellerth/Faragher* defense contemplates holding the employer liable only when the tangible employment action is taken by the harassing supervisor).

16.      In the present case, Plaintiff testified that all of Luna's harassing conduct occurred between March 2006 and August 2006.  Plaintiff failed, however, to describe a single tangible employment action that she suffered as a result of that alleged conduct.  Indeed, Plaintiff admitted that Luna never took any disciplinary action against her.

17.     Plaintiff's annual performance evaluation, which was completed by Luna in November 2006, cannot constitute a tangible employment action because Plaintiff admitted that the content of the evaluation (which was positive) was fair and did not negatively affect her. *See also*, *Oest*, 240 F.3d at 613 (holding that even when negative, performance evaluations are not adverse employment actions).

6

18.     Similarly, Luna's alleged sexually harassing conduct cannot constitute a tangible employment action. *See Gawley v. Indiana University*, 276 F.3d 301, 311 (7th Cir. 2001) (Court holding that sexual harassment cannot itself constitute a tangible employment action or else the Ellerth/Faragher defense could never be raised). There is no evidence to show that Luna's conduct significantly affected Plaintiff's job responsibilities or benefits. In fact, Plaintiff kept the same job title and pay rate throughout her employment. Plaintiff failed to prove any connection between Luna's conduct and her decision to stop working. According to Plaintiff, all of Luna's conduct ended more than *10 months* before she stopped working in late June 2007.

**B.      The Sheriff's Office Exercised Reasonable Care To Prevent And Correct Sexual Harassment.**

19.     An employer exercises reasonable care to prevent harassment by having an anti-harassment policy and by disseminating that policy to its workforce. *Jackson*, 474 F.3d at 501. In *Jackson*, the Seventh Circuit held that the employer satisfied the "reasonable care" prong of the *Ellerth/Faragher* defense because the employer had an anti-harassment policy and notified all of its employees about the policy. *Id*.

20.     At trial, Plaintiff admitted that the Sheriff's Office had an anti-harassment policy prohibiting sexual harassment. Plaintiff testified that she was informed of this policy and provided a copy of the policy during group training at the outset of her employment. She further testified that all employees received a copy of the policy and were instructed that all forms of discrimination were prohibited. Plaintiff testified that she took the policy seriously. Plaintiff also admitted the anti-harassment policy provided a mechanism for reporting violations of the policy and that an employee could report harassment to any supervisor.

21.     Plaintiff's trial testimony establishes the "reasonable care" prong of the

*Ellerth/Faragher* defense.[1]  Like the employer in *Jackson*, the Sheriff's Office had a comprehensive anti-harassment policy that proscribed all forms of discrimination, including sexual harassment.  Like the policy in *Jackson*, the policy of the Sheriff's Office provided a mechanism for employees to report violations, and the Sheriff's Office made all of its employees aware of the policy.  These facts compel the conclusion that the Sheriff's Office exercised reasonable care to prevent and correct sexual harassment.

### C. Plaintiff Unreasonably Failed To Complain About Luna's Alleged Conduct.

22.     The victim of harassment has a duty to use such means as are reasonable under the circumstances to minimize the damage.  *Faragher*, 524 U.S. at 806-807.  One sign of unreasonable behavior is undue delay by the plaintiff in calling the problem to the employer's attention. *Jackson*, 474 F.3d at 502.  When an employer has an established complaint procedure, evidence that the plaintiff failed to use the complaint procedure is sufficient to show that the plaintiff unreasonably failed to avoid harm.  *Id*., *quoting Ellerth*, 524 U.S. at 765.

23.     Here, Plaintiff's trial testimony establishes that she unreasonably failed to avail herself of the Sheriff's Office's anti-harassment policy.  Plaintiff admitted that she never reported Luna's conduct to any manager at the Sheriff's Office while she was working.  Plaintiff stopped working in June 2007.

24.     Although Plaintiff testified she did not complain earlier because she was afraid of losing her job, that excuse fails a matter of law.  *See MacKenzie v. Potter*, 2006 WL 1005127 at

---

[1]  Whether the Sheriff's Office conducted an internal investigation of Plaintiff's allegations concerning Luna is irrelevant because, as discussed in Section C of this motion, Plaintiff did not report her complaint about Luna until long after she stopped working. *See Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 811 (7th Cir. 2000) (Court finding that alleged inadequacy in employer's investigation was immaterial where the plaintiff was not injured by the alleged inadequacy); *Zimmerman v. Cook County Sheriff's Dept.*, 96 F.3d 1017, 1019 (7th Cir. 1996) (Court holding that employer's investigation was irrelevant because the Title VII plaintiff's claimed injury would have occurred regardless of thoroughness of investigation).

*8 (N.D.Ill. April 14, 2006) (an employee's subjective fears of retaliation do not alleviate her duty to alert management about the harassment).

25.     Plaintiff's unreasonable and unexcused delay in reporting Luna's conduct proves that she failed to take advantage of the preventative or corrective opportunities provided by the Sheriff's Office, and therefore the second prong of the *Ellerth/Faragher* defense is established. *See Jackson,* 474 F.3d at 502 (Court holding that second prong of *Ellerth/Faragher* defense was established where plaintiffs waited four months to report discriminatory conduct); *Gawley*, 276 F.3d at 312 (seven-month delay was unreasonable as matter of law).

26.     Thus, with respect to the alleged conduct by Sgt. Luna, the *Ellerth/Faragher* defense is satisfied because the evidence at trial shows that: (a) Plaintiff did not suffer any tangible employment action as a result of Luna's conduct, (b) the Sheriff's Office exercised reasonable care to prevent and correct sexual harassment, and (c) Plaintiff unreasonably failed to avail herself of the preventative or corrective opportunities provided.  Because the Sheriff's Office cannot be held liable for Luna's conduct, the Sheriff's Office is entitled to judgment as a matter of law on this issue.

WHEREFORE, Defendant Will County Sheriff's Office respectfully requests that this Court enter an order granting judgment in its favor and against Plaintiff on the issue of harassment by a supervisor in Plaintiff's Title VII claim, and for such further relief as this Court deems just and proper.

Respectfully submitted,

WILL COUNTY SHERIFF'S OFFICE

s/ Patrick R. Moran
One of their attorneys

Patrick R. Moran
Pamela L. Gellen
LOWIS & GELLEN LLP
200 West Adams Street
Suite 1900
Chicago, IL 60606
T:  (312) 364-2500
F:  (312) 364-1003